IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ALPHA BIOMEDICAL AND DIAGNOSTIC CORP., CRUZ A. RUIZ, | CIVIL NO.: 11-1379 (FAB/SCC) |
| Plaintiffs, | |
| v. | |
| PHILIPS MEDICAL SYSTEMS NETHERLAND BV, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This action was initially filed in the Puerto Rican courts and subsequently removed to federal court. Docket No. 1. Alpha Biomedical and Diagnostic Corp. ("Alpha") and its president, Cruz Ruiz, then filed an emergency motion to extend the operation of a state court temporary restraining order, Docket No. 6, which was denied without prejudice, Docket No. 10, and the state court TRO expired by its own terms. See Docket No. 12. Plaintiffs then filed a motion to remand the case to state court, Docket No. 14, which the Defendants opposed, Docket No. 22. Defendants also moved to dismiss for insufficient service of process and pursuant to the arbitration clause. Docket No. 24. Plaintiffs then again moved for a TRO, Docket No. 28, and moved the court to hold in abeyance the Defendants' motion to dismiss pending a decision on the issue of remand, Docket No. 30. The presiding district judge referred the case to this court for reports and recommendations on these various motions.

Because it goes to the court's jurisdiction over this case, we will address the question of

1

Alpha Biomedical and Diagnostic Corp. v. Philips Med. Sys. Netherland BV
Civil No. 11-1379 (FAB/SCC)
Report and Recommendation
Page No. 2

removability first.

## I. Fraudulent Joinder

Plaintiffs, Puerto Rican citizens, filed suit in the Puerto Rico Court of First Instance, naming as defendants Philips Medical Systems Nederland B.V.[1] ("Philips Nederland"), a Netherlands-based corporation, as well as Philips Medical Systems Puerto Rico ("Philips PR") and Ismael Jaras, both citizens of Puerto Rico. Docket No. 20-1, ¶¶ 1-5. Thus, the parties lacked complete diversity, and the case was not on its face removable. 28 U.S.C. § 1441; see also Lincoln Prop. Co. v. Roche, 546 U.S. 81, 84 (2005). Nonetheless, Defendants sought removal by alleging that the non-diverse defendants—Philips PR and Jaras—had been fraudulently joined for the purpose of defeating diversity and that the only real defendant was the diverse Philips Nederland. Docket No. 1. As such, Defendants argue, removal is proper.

Fraudulent joinder is the joining, by a plaintiff, of defendants, against whom the plaintiff does not seek to secure a judgment, for the sole purpose of defeating diversity. See Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 4 (D. Mass. 2001). In this sense, the doctrine is meant to "ensure that removal procedure is fairly applied." See Linnin v. Michielsens, 372 F. Supp. 2d 811, 817 (E.D. Va. 2005) (mem. op.). While the First Circuit has never articulated a precise standard for deciding fraudulent joinder cases, see Mills, 178 F. Supp. 2d at 4-5, it has noted that "a finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action

---

[1]Sued, apparently incorrectly, as Philips Medical Systems Netherland BV. Docket Nos. 1, at 1; 20-1.

against the fraudulently joined defendant." Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983). In light of this direction, other courts in this district considering fraudulent joinder allegations have tended to follow the Fifth Circuit. See, e.g., Renaissance Mktg., Inc. v. Monitronics Int'l, Inc., 606 F. Supp. 2d 201 (D.P.R. 2009) (following Smith v. Petsmart, Inc., 278 Fed. App'x 377, 379 (5th Cir. 2008)); Figueroa v. BASF Corp., No. 05-1317(CCC), 2006 U.S. Dist. LEXIS 59911, *4-5 (D.P.R. Aug. 18, 2006) (following Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003)).

The Fifth Circuit has held that to prove fraudulent joinder a defendant must show that either (1) there was actual fraud in the pleading of jurisdictional facts, or (2) the plaintiff is unable to establish a cause of action against the non-diverse party in state court. Larroquette v. Cardinal Health 200, Inc., 466 F.3d 373, 376 (5th Cir. 2006). Here, there are no allegations of fraud in the pleading of jurisdictional facts, and we are concerned only with the second prong of the Fifth Circuit's test: whether Plaintiffs complaint failed to state a cause of action against the non-diverse parties. In this situation, the Fifth Circuit "ordinarily conduct[s] a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether, under state law, the complaint states a claim against the in-state defendant." Id.[2] However, a court may, at its discretion, look at summary judgment type evidence, see Larroquette, 466 F.3d at 376, and must resolve all factual and legal ambiguities in favor of the plaintiff. See Figueroa, 2006 U.S. Dist. LEXIS 59911, at *5. Thus, while

---

[2]But see Hartley v. CSX Transp. Corp., 187 F.3d 422, 424 (4th Cir. 1999) ("The party alleging fraudulent joinder bears a heavy burden . . . . Th[e] standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Rule 12(b)(6).").

some courts in this district have suggested that a defendant alleging fraudulent joinder bears a particularly heavy burden,[3] it seems simplest to treat the inquiry as a modified version of a motion to dismiss, asking whether the state court complaint states a plausible claim under Rule 8(a)(2).

### A. The Non-Diverse Defendants

Plaintiffs ask for relief against Philips PR and Jaras for tortious interference with contract and defamation. It is therefore necessary to examine the complaint and the contours of the Puerto Rican law on which the causes of action are based and determine whether a valid claim has been stated against the non-diverse defendants. If either of the two claims has been sufficiently stated under Rule 8(a)(2), the case must be remanded to state court.

### B. Tortious Interference

A plaintiff alleging tortious interference with contract under Puerto Rican law, P.R. Laws Ann. tit. 31, § 5141, must show: (1) that a contract exists, (2) that the defendant interfered with that contract, (3) fault on the part of the defendant, (4) damage to the plaintiff, and (5) a nexus between the defendant's fault and the plaintiff's damage. New Commc'n Wireless Servs. v. Sprintcom, Inc., 287 F.3d 1, 9 (1st Cir.2002) (citing Gen. Office Prods. Corp. v. A.M. Capen's Sons, Inc., 115 P.R. Offic. Trans. 727, 734 (1984). The fault element requires that the defendant's interference be

---

[3]See e.g., Renaissance Mktg., Inc. v. Monitronics Int'l, Inc., 606 F. Supp. 2d 201, 208 (D.P.R. 2009) ("[A] defendant  seeking to prove that a co-defendant was fraudulently joined bears an extremely heavy burden."); see also E. Farish Percy, Making a Federal Case of It: Removing Civil Cases to Federal Court Based on Fraudulent Joinder, 91 Iowa L. Rev. 189, 216-20 (2005) (explaining that federal circuit courts currently apply an array of tests in fraudulent joinder cases).

intentional and with knowledge of the contract's existence—that is, the defendant must have "intended to interfere with the contract, knowing that this interference would cause injury to the plaintiff." Id. at 10 (citing Figueroa v. Walgreens of San Patricio, Inc., 155 P.R. Dec. 560 (2001)).

Plaintiffs' complaint fails to state a claim for tortious interference. Philips PR allegedly interfered with a contract between Philips Nederland and Alpha in March 2011, but Plaintiffs fail to plead that there was a contract in effect at the time of that interference. What is plead is this: for nine years, Alpha acted as a distributor for Philips Nederland. Docket No. 20-1, ¶ 6. That distribution contract was terminated effective December 31, 2010, Docket No. 20-1, ¶ 12, but it was informally continued pursuant to a verbal agreement, Docket No. 20-1, ¶ 14. Philips PR allegedly interfered with this verbal contract by sending letters to Alpha's clients in early March 2011 claiming that Alpha's relationship with Philips Nederland had ceased in December 2010. Docket No. 20-1, ¶ 19. As proof of this interference, Plaintiffs point to letters dated March 2 and 9, 2011. Docket No. 20-1, at 21, 23. Problematically for their claim, however, Plaintiffs fail to specify the alleged termination date of the verbal contract between Alpha and Philips Nederland, pleading, instead, that it was terminated "[o]n March 2011." Docket No. 20-1, ¶ 18. It is unclear whether the word "on" is a typo—perhaps Plaintiffs meant "in"—or whether the precise date the contract is alleged to have been terminated was left out due to an omission. Either way, the complaint's wording and structure suggests that the alleged interference occurred *after* Philips Nederland terminated the verbal agreement: it is in the paragraph immediately after the paragraph about termination that Plaintiffs allege Philips PR sent the tortious letters to Alpha's clients. Docket No. 20-1, ¶¶ 18-19. But, of

course, if the contract between Alpha and Philips Nederland had terminated prior to the time Philips PR sent the letters, even if that termination was the result of a breach on the part of Philips Nederland, then Philips PR could not have interfered with that contract, which had ceased to exist.

Thus, because Plaintiffs failed to allege that contract existed at the time of the alleged interference, they have failed to state a claim for tortious interference.

### C. Defamation

Under Puerto Rican law, defamation actions can be premised on several statutory bases. See, e.g., P.R. Const. art. II, § 8; P.R. Laws Ann. tit. 31, § 5141; P.R. Laws Ann. tit. 32, §§ 3141-49. Regardless of the source, however, the law of defamation in Puerto Rico follows the common law tradition. See Aponte v. Calderon, 284 F.3d 184, 197 (1st Cir. 2002) ("[T]he Puerto Rico Supreme Court has explicitly said that Puerto Rico libel and slander law follows the common law tradition." (citing Villanueva v. Hernandez Class, 28 P.R. Offic. Trans. 618 (1991))). A plaintiff alleging a defamation claim must therefore show that the defendant "(1) made a false statement, (2) in a negligent manner, (3) causing actual damage to the plaintiff." Baltodano v. Merck, Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 43 (1st Cir. 2011). The question, then, is whether Plaintiffs' complaint contained sufficient factual allegations to make out a claim on those elements.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court articulated a two-part test for deciding whether the pleadings in a complaint stated a plausible claim for relief. First, the court must "begin by indentifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" to which factual pleadings are entitled. Id. at 1950. Once such

conclusory pleadings are disregarded, the court should look to the well-pleaded factual allegations and, assuming their veracity, "determine whether they plausibly give rise to an entitlement for relief." Thus, the factual allegations included in the complaint "must be enough to raise a right to relief above the speculative level," but they need not amount to "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Here, two of Plaintiffs' pleadings are conclusory, and, under Iqbal and Twombly, should be disregarded.[4] However, several other paragraphs make well-pleaded factual allegations. Docket No. 20-1, ¶¶ 44-54. In essence, Plaintiffs appear to claim that they were extorted by a Philips employee named Alex Luna, who demanded that Alpha make payments to his personal American Express card. According to Plaintiffs, Alpha notified Philips of Luna's conduct, and as a result an investigation was launched and Luna was terminated. Plaintiffs further allege that, these being the facts, Philips falsely accused Plaintiffs of entering into illegal deals with Luna, causing damage to Alpha's business reputation and its relationship with its clients. All of this amounts to a plausible claim for relief, in that Plaintiffs allege that the non-diverse defendants: (1) made a false statement, i.e., that Alpha had entered into illegal deals with Luna; (2) in a negligent manner, i.e., with knowledge that Alpha had in fact been extorted by Luna and had brought the extortion to defendants' attention; (3) that caused actual damage to the plaintiff, i.e., to Alpha's business relationships.

_____

[4] Paragraphs 20 and 21 of the complaint state that Philips PR and Jaras "joined in a libel and discredit campaign" against the Plaintiffs and that they knew the falsity of their statements. Docket No. 20-1, ¶¶ 20-21. Both of these pleadings state legal conclusions.

Alpha Biomedical and Diagnostic Corp. v. Philips Med. Sys. Netherland BV
Civil No. 11-1379 (FAB/SCC)
Report and Recommendation
Page No. 8

Defendants make two primary objections to this analysis. First, they argue that Plaintiffs failed to state a claim because their allegations are insufficiently specific in that the complaint does not state (1) whether the alleged statements were written or oral, (2) who made the statements, (3) to whom the statements were made, (4) the content of the statements, (5) or the dates and times the statements were made. Docket No. 1, ¶¶ 18-21. Who made the statements to whom is a question answered by the complaint, if implicitly: Philips or its agents or representatives made the statements, and they made them to Alpha's clients. Docket No. 20-1, ¶¶ 45, 53 (alleging that the "[t]he Philips companies" made false statements that resulted in damage to Alpha's reputation with their clients). Likewise, the alleged statements' content is quite clear from the complaint, as is explained above. As for the precise dates and times the alleged statements were made, that objection asks for factual specificity that is not required in a complaint. Twombly, 550 U.S. at 555 (noting that complaints do not require "detailed factual allegations"); see also 5 Charles A. Wright, et al., Federal Practice and Procedure § 1215 (3rd ed. 2004) (noting that while pleadings must contain a statement of circumstances and occurrences, "great generality in the statement of these circumstances will be permitted as long as defendant is given fair notice of what is claimed"); cf. Fed. R. Civ. P. 9 (requiring particularity in certain pleadings). Finally, the alleged failure of the Plaintiffs to plead whether the defamatory statements were written or oral fails, first because it is incorrect—Plaintiffs refer multiple times to libel, which is by definition written, see, e.g., Docket No. 20-1, ¶ 44 (alleging that the Philips companies "embarked on a libel campaign")—and second because the possibility that the plaintiff does not know, before discovery, the medium by which defamatory statements were

communicated is an insufficient basis on which to dismiss an otherwise well-pleaded defamation claim.

Defendants' second objection is that the allegedly defamatory statements are true. Docket No. 1, ¶ 22;[5] see Segarra-Jimenez v. Banco Popular, Inc., 421 F. Supp. 2d 452, 458 (D.P.R. 2006) (noting that only statements that are actually false may create liability for defamation (citing Villanueva v. Hernandez Class, 128 P.R. Dec. 618, 643 (1991))). Essentially, Defendants argue that the complaint, by admitting that Alpha made some payments to Luna (payments that, in Plaintiffs' telling, appear to be the result of extortion or similar),[6] they automatically admit the truth of the allegedly defamatory accusation made by Defendants, namely that Alpha and Luna engaged jointly in an illegal venture. Docket No. 22, at 24-26. But it's easy to imagine a set of facts that refutes Defendants' objection. For example: Alpha was forced, unwillingly, into dealings with Luna, but Philips, in statements to Alpha's clients, misconstrued the nature of this relationship. Point being that questions about the timing and nature of Luna's relationship with Alpha, and about Defendants' statements regarding that relationship, are disputes of a factual nature that, in this procedural posture, must be resolved in favor of the Plaintiffs. There is no fundamental incompatibility between any of

_____

[5] The notice of removal, Docket No. 21, contains two paragraphs numbered "22," the first of which is referred to here.

[6] In fact, Plaintiffs' complaint does not admit to making any payments to Luna. Instead, it alleges that it alerted Philips to "the payments demanded by" him. Docket No. 20-1, ¶ 46. Defendants claim that Plaintiffs did make these payments, Docket No. 1, ¶ 22, but they provide no proof of that fact, and, as discussed below, the fact of payment would not be fatal to Plaintiffs' cause of action in any case.

Alpha Biomedical and Diagnostic Corp. v. Philips Med. Sys. Netherland BV
Civil No. 11-1379 (FAB/SCC)
Report and Recommendation
Page No. 10

the statements in Plaintiffs' complaint, and the question of whether the alleged defamatory statements were true is not properly addressed at this time.

Plaintiffs, despite failing to state a claim for tortious interference, state a valid claim against the non-diverse defendants for defamation, and the case should therefore be remanded to state court.

Plaintiffs additionally ask for an award of attorneys fees incurred as a result of removal. See 28 U.S.C. § 1447(c) (authorizing a court to award attorneys fees incurred as a result of removal if the court determines that the case should be remanded to state court). The standard for awarding fees under section 1447(c) "turn[s] on the reasonableness of removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Thus, fees should be awarded "only where the removing party lacked an objectively reasonable basis for seeking removal." Id. Here, Defendants removed based on fraudulent joinder, arguing that both of the claims Plaintiffs made against the non-diverse defendants were invalid. Though we believe that one of those claims was in fact valid, and that removal was therefore improper, we also find that one of the Plaintiffs' claims failed to meet the Rule 8(a)(2) standard. Defendants were therefore correct in one of their two primary arguments, and for this reason we cannot conclude that they lacked an objectively reasonable basis for removal. See id. No fees should be awarded.

**II. Conclusion**

For the reasons stated above, I recommend that the motion to remand to state court, Docket No. 14, be GRANTED. The remaining motions pending before the court, Docket Nos. 17, 24, 28, 30, would be mooted by the remand and should accordingly be terminated.

Alpha Biomedical and Diagnostic Corp. v. Philips Med. Sys. Netherland BV
Civil No. 11-1379 (FAB/SCC)
Report and Recommendation
Page No. 11

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. See

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); Local Rule 72(d). Failure to file same within the

specified time waives the right to appeal this report and recommendation. Henley Drilling Co. v.

McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

San Juan, Puerto Rico, this 29th day of September.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE